YELVERTON, Judge.
The Rapides Area Planning Commission and the Rapides Parish Police Jury, defendants below, appeal a judgment of the district court ordering them to grant to plaintiff, Tioga/Triple R Corporation Partnership, a building permit to construct an apartment complex in an unzoned area of Rapides Parish. The initial rejection of the application for the permit, which brought on the lawsuit, was found by the district judge to have been arbitrary and capricious; hence the order that the application be granted. We affirm.
The basic factual and procedural background is uncomplicated. Tioga/Triple R Corporation Partnership, the owner of some land near Tioga in Rapides Parish, planned to build a 42-unit apartment complex on the property, to be known as Country View Apartments. The project was to contain its own sewage treatment plant. The builders followed the usual procedure for obtaining the required governmental permits. They acquired a permit from the Louisiana State Fire Marshall, approving the plans. They also obtained a permit from the Department of Health & Human Resources, approving the sewage treatment plant and planned discharge system. They also got a permit from the Louisiana Department of Transportation granting permission for the discharge of the treated sewage effluent into the highway drainage ditch along Louisiana Highway 71.
Armed with these plans and permits, the plaintiff submitted its proposed construction project for approval to the Rapides Area Planning Commission, as required by local ordinance. The application was analyzed by a committee, headed by Jan James, senior planner for the Rapides Area Planning Commission, and the committee recommended approval. Despite this recommendation, at a public hearing conducted by the commission, at which some area property owners appeared in opposition, the commission voted to disapprove the plans. The developers then appealed to the Rapides Police Jury, as was their right under the ordinance, and, after a public *1364 hearing at which the area property owners again appeared in opposition, the Police Jury also disapproved the project.
The partnership then filed suit to compel these public bodies to grant the application, alleging in the petition that the application was in compliance with all applicable local ordinances and State regulations, and that the planning commission and Police Jury, in rejecting the application without giving reasons and having no valid reasons, had acted arbitrarily and capriciously. After a full hearing and after considering substantial testimony, the trial court found that all legal requirements, both state and local, had been complied with by the plaintiff. The trial court concluded that the action of the commission and Police Jury in denying the building permit was arbitrary and capricious. It granted the relief sought by the plaintiff and ordered these two public entities to grant their approval.
In their appeal from this judgment, the Police Jury and the planning commission now assign three reasons allegedly supporting their denial of the building permit, and urge the same three reasons as assignments of error. They contend: (1) the proposed drainage of the sewage effluent could cause a health hazard; (2) the area in which the project was to be built has inadequate fire protection; and (3) the plaintiff failed to produce conventional servitudes for the proposed discharge of the sewage effluent into public ditches and across private property.
The evidence shows that the sewerage plans, approved by both the State health and highway officials, would utilize the public ditch on the east side of Louisiana Highway 71. The health officials made the requirement that the course of the effluent be restricted to that ditch. The course would not be contained in the drainage ditch along the highway, but would eventually leave the highway ditch and make its way down various ditches and bayous until it emptied into Flagon Creek. The discharge would amount to 16-17,000 gallons a day. The developers had obtained no rights of way or servitudes other than the highway permit. There was no evidence that any servitudes from private individuals had been acquired for drainage from the highway ditch to Flagon Creek.
The property owners who objected to the building permit were persons who lived on Louisiana Highway 71. These persons testified generally that the addition of effluent into the roadside ditch would create drainage problems. One member of the Police Jury testified that his vote was influenced by the belief that drainage problems would occur.
The record in this case does not support a finding that any health hazard would be created by the discharge of effluent into the drainage ditch. Vernon Parker, the director of the Division of Environmental Health for the Department of Health & Human Resources testified that the sewage treatment plant and discharge of effluent met the requirements under state law and that the drainage of the effluent posed no health hazard to the community. It was his opinion that problems might occur only if the ditches became stopped up or improperly maintained. This was unlikely, however, because he stated that the Department of Health & Human Resources would monitor the flow of discharge periodically and if any problems occurred, the department would revoke the plaintiffs permit to discharge the effluent in the ditch. Further testimony revealed the 16-17,000 gallon daily discharge would go unnoticed. Melvin Jackson, an administrator for the Department of Transportation testified that the department would modify the drainage ditches to insure the effluent would stay on the east side of the highway as required by the health department’s permit.
Based on this evidence, and on the proven fact that the plaintiff had complied with state law, the defendants could not unconditionally deny plaintiff’s use of property because of the possibility of health hazards which could be satisfactorily prevented by modifying the present condition of the drainage ditch and periodic monitoring by state agencies. See Bode v. Parish of Jefferson, 309 So.2d 730 (La.App. 4th Cir. *1365 1975) for an analogous situation. Therefore, the first assignment of error is without merit.
The second assignment of error, the fire protection argument, is equally without merit. Although the State Fire Marshall approved the plans, the local fire chief for the Alpine Volunteer Fire Department testified that the new apartment complex would be in his area of responsibility, and that his equipment was inadequate to fight a fire at the proposed construction project. However, the fire fighting capability of this volunteer department, the evidence shows, was limited even as to the existing structures. While the defendants offered fairly persuasive testimony that the local fire department was inadequately equipped to fight a major fire at the apartment complex, we can find nothing in the law supporting this objection as sufficient to justify a denial of a permit for a use of property not otherwise prohibited by law. In the present case the record fails to reveal any zoning laws or local ordinances which would prohibit this contemplated use. Almost as surplusage, the plaintiff also introduced an approving certificate from the state fire marshall’s office.
The defendant’s final argument is that the plaintiff failed to produce any conventional servitudes for the discharge of effluent into public ditches and across private property. The initial discharge of effluent goes into the highway right of way ditch along Highway 71. The plaintiff offered into evidence permits from the State Department of Transportation & Development and the Department of Health & Human Resources authorizing this use of the highway ditch. Obviously, the plaintiff has met the requirements of the state regulatory agencies for the discharge of effluent into the public ditch.
However, defendants argue that since the effluent, once it enters the public ditch, must flow across private property before reaching Flagon Creek, there then occurs a violation of La.Civil Code arts. 655-658, dealing with natural drainage, and that defendants should have obtained a conventional servitude from the owners of these lands before being permitted to discharge the effluent into that part of the natural drainage system.
The trial court ruled that the defendants could not assert the private rights of these landowners since they were not parties to the suit. ’ The defendants, relying on the case of Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), cert denied 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982), argue that the trial court erred in this ruling. In the Matherne case, the parish governing authority sought to enjoin a landowner from diverting his property’s drainage from its natural flow and destination into a parish drainage project, because the diversion of the natural drain impaired the efficiency of the public drainage system. Because the record did not establish that the police jury was owner of a servient estate or neighboring property overburdened by the defendant’s activities, the Supreme Court considered the police jury’s standing to bring suit. It found that the police jury had standing to bring suit under LSA-R.S. 38:113, which gives control to local governing bodies over all public drainage channels within the limits of their districts, and concluded that the public drainage ditch in question was under the control of the police jury.
In the present case no evidence was presented to establish that the drainage ditches running through private property were public drainage channels under the control of the defendants. There was testimony by Paul Morrow, a police jury member, that the police jury had on occasion cleared out the drainage ditches. However, Mr. Morrow’s further testimony revealed that these ditches were not considered its responsibility since the parish had no funds or tax allocated to maintain them. This testimony was insufficient to establish that the police jury had control over the channels as authorized by R.S. 38:113. Therefore, the trial court’s ruling that the police jury could not assert the rights of the private property owners was correct.
*1366 For the reasons given above, the judgment of the trial court is affirmed, appellants to pay costs of this appeal.
AFFIRMED.